**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S** |
| | ) | **MOTION TO SUPPRESS EVIDENCE** |
| vs. | ) | |
| | ) | Case No. 4:12-cr-205 |
| Jonathan James Smith, | ) | |
| | ) | |
| Defendant, | ) | |

Before the Court is the Defendant's "Motion to Suppress Evidence" filed on December 12, 2012. See Docket No. 16. The Government filed a response in opposition to the motion on December 21, 2012. See Docket No. 19. An evidentiary hearing was held on January 16, 2013, in Bismarck, North Dakota. See Docket No. 27. The Court denies the motion for the reasons set forth below.

### I.     BACKGROUND

On August 16, 2012, in New Town, North Dakota, police received a call shortly after 6:00 a.m. reporting a sexual assault of a juvenile female. See Docket Nos. 19-1 and 19-2. Patrol Officers Marvel Heart and Emily Sitting Bear responded to the call. As they traveled to interview the juvenile, a man stopped the officers to report that an individual in Salter's Trailer Court appeared to be "passed out" in a vehicle. Officer Heart relayed the report to dispatch and the officers continued on their way to interview the alleged victim at the Prairie Winds Trailer Court.

1

The alleged victim, a juvenile female (C.T.), reported she had been sexually assaulted by a man she identified as "John Smith" who had burn scars on his face and arms. Another witness stated she also knew a "Jonathan Smith" with burn scars. During the incident, the assailant was wearing a white t-shirt and light blue denim jeans with red lettering on the right pant leg.

Patrol Officer Criselda Cruz responded to the report of the individual who was "passed out" in Salter's Trailer Court around 7:45 a.m. Officer Cruz discovered a vehicle with the engine running and the window on the driver's side rolled down. The man behind the wheel in the vehicle was sleeping. While just outside the vehicle, Officer Cruz detected the odor of alcohol and observed a vodka bottle inside. Officer Cruz woke the individual and shut off the car engine. The Defendant, Jonathan Smith, was identified as the man behind the wheel. Smith stated that he had been drinking the night before, traveled to his brother's trailer, and slept in his car to avoid disturbing his brother's family. Although Smith's speech was initially slurred and he appeared confused, Officer Cruz testified that after a short time Smith "woke up" and his speech appeared to be normal.

Smith was placed under arrested for actual physical control of a motor vehicle. Officer Cruz handcuffed Smith and escorted him to the back seat of the patrol car. Smith walked to the patrol car guided by Officer Cruz, without staggering or stumbling. Officer Cruz testified that at the time of the arrest she read Smith his rights under the Three Affiliated Tribes Tribal Code of Criminal Procedure Rule 6 ("Tribal Code Rule 6"). A copy of Tribal Code Rule 6 was admitted into evidence. <u>See</u> Docket No. 27-1. Officer Cruz stated that Smith "nodded" in acknowledgment that he understood his rights under Tribal Code Rule 6.

As Officer Cruz entered the patrol car, she heard Smith's name over the dispatch radio. The dispatch officer requested that Smith be brought to the New Town Police Station for

questioning, without specifying the reason. Officer Cruz testified that the police station was approximately one (1) mile from Salter's Trailer Court. When the patrol car arrived at the police station or shortly thereafter, Officer Sitting Bear met Officer Cruz outside. Officer Cruz said when she arrived at the police station Smith was awake and coherent.

Officer Sitting Bear testified that she observed Smith in the patrol car and confirmed he appeared to closely match the description of the assailant who had committed a sexual assault earlier that evening. He had burn scars on his face and arms. Smith was also wearing a white t-shirt and blue jeans with red lettering on the right pant leg. After determining Smith was a person of interest, Officer Sitting Bear recited Tribal Code Rule 6 to Smith before questioning him. Smith responded "yes" when asked if he understood his rights under Tribal Code Rule 6. Officer Sitting Bear then escorted Smith to an interview room inside the police station. According to Officer Heart, Officer Sitting Bear also recited Tribal Code Rule 6 to Smith in the interview room prior to questioning.

Officers Heart and Sitting Bear began to question Smith at approximately 8:20 a.m. Smith initially said he did not know the alleged victim. However, he later acknowledged the alleged victim was a friend of his sister and he had been drinking alcohol with her the previous night. Smith, initially, denied having any sexual contact with the alleged victim. However, he later admitted that he had engaged in consensual sexual intercourse with her in his vehicle. Portions of the interview were recorded on video and admitted into evidence. See Docket Nos. 19-3 and 27-4. Officer Sitting Bear testified that she could smell the odor of alcohol on Smith during the interview but his speech was at all times understandable and coherent. The interview of Smith concluded at approximately 9:00 a.m. on August 16, 2012.

On November 8, 2012, Smith was indicted for sexual abuse of a minor. See Docket No. 2. The indictment states as follows:

> In or about August 2012, in the District of North Dakota, in Indian country, and within the exclusive jurisdiction of the United States,
>
> JONATHAN JAMES SMITH,
>
> an Indian, knowingly engaged in a sexual act with another person, namely, C.T., who had attained the age of twelve (12) years, but who had not attained the age of sixteen (16) years, and who was at least four (4) years younger than JONATHAN JAMES SMITH, and the sexual act consisted of contact between the penis and vulva;
>
> In violation of Title 18, United States Code, Sections 2243(a) and 1153.

See Docket No. 2.

On December 12, 2012, Smith filed a motion to suppress evidence. See Docket No. 16. He seeks to suppress "all evidence relative to the interview of the Defendant by law enforcement on or about August 16, 2012, as well as any written statements prepared by the Defendant as a result of any interviews[.]" See Docket No. 16. Smith contends he was subjected to a custodial interrogation, but no evidence demonstrates he was advised of his *Miranda* rights. In addition, Smith contends he was too intoxicated to voluntarily waive his *Miranda* rights. The Government filed a brief in opposition to the motion to suppress on December 21, 2012. See Docket No. 19. An evidentiary hearing was held on January 16, 2013, in Bismarck, North Dakota.

## II.  LEGAL DISCUSSION

### A.  *MIRANDA* RIGHTS

Smith contends the statements he made to law enforcement officers must be suppressed because the officers failed to advise him of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). The Government acknowledges that "Smith was in custody as he was arrested for being

in Actual Physical Control, and taken into a room at the police station where he was interviewed concerning the alleged sexual assault." See Docket No. 19, p. 3. It is well-established that law enforcement officers must advise a criminal suspect of his *Miranda* rights prior to custodial interrogations and, therefore, a *Miranda* warning was necessary under the circumstances.

The United States Supreme Court in *Miranda* established procedural safeguards to ensure that law enforcement officers advise criminal suspects of their Fifth and Fourteenth Amendment rights prior to conducting custodial interrogations. Officers must advise a criminal suspect of the following: (1) the right to remain silent, (2) that any statement may be used against them in court, (3) the right to legal counsel, either retained or appointed, and to have legal counsel present during the interview, and (4) the suspect may stop answering questions at any time during the interview. See Miranda, 384 U.S. at 444-45.[1]

Law enforcement officers need not provide a ritualistic recitation of the defendant's rights to comply with *Miranda*. The Supreme Court "has never indicated that the 'rigidity' of *Miranda* extends to the precise formulation of the warnings given a criminal defendant." California v. Prysock, 453 U.S. 355, 359 (1981). Courts "need not examine *Miranda* warnings as if construing a will or defining the terms of an easement." Duckworth v. Eagan, 492 U.S. 195, 203 (1989). Rather, "[t]he inquiry is simply whether the warnings reasonably convey to a

---

[1] The Supreme Court in *Miranda* summarized the proscribed procedure as follows:

As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.

Miranda, 384 U.S. at 444-45.

suspect his rights as required by *Miranda*." Id. (citing Prysock, 453 U.S. at 361) (quotations omitted).

Officer Cruz and Officer Sitting Bear testified that they each advised Smith of his rights under Tribal Code Rule 6 prior to the interview that was conducted on August 16, 2012. In addition, Officer Heart testified that he observed Officer Sitting Bear recite Tribal Code Rule 6 to Smith before any questioning began. Tribal Code Rule 6 provides as follows:

### TRIBAL CODE RULE #6

(1) You have the right to remain silent.
(2) Any statements made by you can be used against you in court.
(3) You have the right to obtain counsel at your own expense, if You do not wish to obtain counsel at your own expense, you May obtain the services of the lay advocate at no expense to yourself.
(4) If you begin to answer any questions or make any statements, You may choose to stop at any time.
(5) Do you understand you[r] rights as I have explained them to you.

See Docket No. 27-1 (errors in original).

This Court has previously construed Tribal Code Rule 6 to be the effective equivalent of a *Miranda* warning. United States v. Fredericks, 273 F. Supp. 2d 1032, 1040-41 (D.N.D. 2003). In Fredericks, the Court stated that "Tribal Rule 6 differs from Miranda only in that it provides for the appointment of a lay advocate as opposed to an attorney in the event that the person cannot afford counsel." Id. at 1041. Law advocates on the Fort Berthold Indian Reservation are required to have education and/or experience in the law, and must be licensed by the Three Affiliated Tribes. The Court found that "[a]lthough not an attorney, a lay advocate should posses enough education or knowledge by virtue of their ability to meet the tribe's licensing requirements to engage in an informed discussion with a suspect about the wisdom of speaking to law enforcement officers." Id. The Court concluded "the warning conveyed to [the defendant by law enforcement] was an effective equivalent to the Miranda warning." Id.

6

Smith contends he does not remember the officers reciting Tribal Code Rule 6 or informing him of his constitutional rights under *Miranda*. However, each of the three law enforcement officers who testified at the evidentiary hearing clearly said the warnings set forth in Tribal Code Rule 6 were given to Smith before he was questioned. The Court finds the Government has proven by a preponderance of the evidence that Tribal Code Rule 6 was recited to Smith prior to any interrogation being conducted. The Court further finds that Tribal Code Rule 6 is effectively the equivalent of a *Miranda* warning and the officers reasonably conveyed to Smith the rights set forth in *Miranda*.

Smith also contends that even if he was advised of his *Miranda* rights, his statements must nonetheless be suppressed because (1) the Government failed to meet its "heavy burden" in showing that Smith voluntarily waived his *Miranda* rights; and (2) Smith was too intoxicated to voluntarily waive those rights.

### B. **WAIVER OF *MIRANDA* RIGHTS**

At the evidentiary hearing, Smith asserted that the Government failed to demonstrate he voluntarily waived his *Miranda* rights. In support of this argument, Smith cited to language of the *Miranda* opinion which states, in part, that the Government has a "heavy burden" to show a waiver was voluntary, intelligent, and knowing.

In Berghuis v. Thompkins, 130 S. Ct. 2250, 2260-61 (2010), the United States Supreme Court recognized that "[s]ome language in *Miranda* could be read to indicate that waivers are difficult to establish absent an explicit written waiver or a formal, express oral statement." The *Miranda* opinion states "'a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his

right to retained or appointed counsel.'" Id. at 2261 (quoting Miranda, 384 U.S. at 475). However, the "course of decisions since *Miranda*, informed by the application of *Miranda* warnings in the whole course of law enforcement, demonstrates that waivers can be established even absent formal or express statements of waiver[.]" Id. "'[I]f anything, our subsequent cases have reduced the impact of the *Miranda* rule on legitimate law enforcement while reaffirming the decision's core ruling that unwarned statements may not be used as evidence in the prosecution's case in chief.'" Id. (quoting Dickerson v. United States, 530 U.S. 428, 443-44 (2000)). Subsequent cases have "'retreated' from the 'language and tenor of the *Miranda* opinion[.]'" Id. (quoting Connecticut v. Barrett, 479 U.S. 523, 531-32 (1987) (Brennan, J., concurring in judgment)). The Supreme Court has clarified "that this 'heavy burden' is not more than the burden to establish [a] waiver by a preponderance of the evidence." Id. (citing Colorado v. Connelly, 479 U.S. 157, 168 (1986)). Thus, the Government need only show that a voluntary waiver occurred by a preponderance of the evidence.

The Supreme Court has held that "[w]here the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." Thompkins, 130 S. Ct. at 2262. A suspect must unambiguously invoke their *Miranda* rights. Id. at 2259-60. Thus, "[a]s a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." Id. at 2262. Accordingly, as Supreme Court opinions subsequent to *Miranda* recognize, the Government may demonstrate a defendant implicitly waived his *Miranda* rights.

Smith contends the Government failed to show he voluntarily waived his *Miranda* rights or that he was too intoxicated to voluntarily waive those rights.  In order to use a statement made by a defendant during a custodial interrogation, the Government must prove, by a preponderance of the evidence, that a valid waiver of those rights was obtained.  Thompkins, 130 S. Ct. at 2261 (citing Connelly, 479 U.S. at 168).  A defendant's *Miranda* waiver must be voluntary, knowing, and intelligent.  United States v. Gaddy, 532 F.3d 783, 788 (8th Cir. 2008); Moran v. Burbine, 475 U.S. 412, 421 (1986).  The validity of a waiver has two dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

Moran, 475 U.S. at 421.  The totality of the circumstances determines whether a waiver is valid.  Id.  The defendant's background, experience, and conduct are all relevant to this inquiry.  United States v. Jones, 23 F.3d 1307, 1313 (8th Cir. 1994) (original citations omitted).

In addition, alcohol and drug use are relevant factors in determining the effect of an alleged *Miranda* waiver.  However, intoxication does not automatically render a waiver involuntary.  United States v. Red Bow, 819 F. Supp. 2d 898, 902-04 (D.N.D. 2011); Gaddy, 532 F.3d at 788 (citing United States v. Casal, 915 F.2d 1225, 1229 (8th Cir. 1990), *cert. denied*, 499 U.S. 941 (1991)); United States v. Phillips, 506 F.3d 685, 687 (8th Cir. 2007); United States v. Makes Room, 49 F.3d 410, 415 (8th Cir. 1995).  Only where intoxication overwhelmed the suspect's will is the evidence sufficient to show a suspect is unable to voluntary waive their *Miranda* rights.  Gaddy, 532 F.3d at 788 (original citation omitted).  In cases where a criminal suspect was under the influence alcohol or drugs, the Eighth Circuit Court of Appeals has consistently upheld the voluntariness of *Miranda* waivers where the evidence shows the

defendant was coherent, demonstrated sufficient recollection of events, and appeared in control of his faculties.[2]

It is undisputed that Smith consumed alcohol the night before the interview with law enforcement. Smith testified that he consumed alcoholic beverages while at a bar and also after leaving the bar on the night of August 15, 2012. Smith estimated he consumed four (4) beers and three (3) shots of alcohol at the bar, and another three (3) beers after leaving the bar. Smith said he avoided shots of hard alcohol after leaving the bar because he was driving. In the morning of August 16, 2012, he felt "half-shot," that is, he still felt the effects of alcohol, but was not hung-over or nauseous. Smith estimated that it had been four (4) hours since his last drink by the time the interview began. Each of the law enforcement officers testified that they detected the odor of alcohol on Smith on August 16, 2012. Officer Heart said he could tell Smith was "intoxicated" during the interview. The other officers testified that during the interview Smith was awake, coherent, cooperative, and did not appear to be so intoxicated he was unaware of what was going on. A review of the audio-video recording of the interview confirms these observations.

---

[2] In United States v. Contreras, 372 F.3d 974, 977-78 (8th Cir. 2004), the defendant used methamphetamine the evening before and marijuana on the day he provided statements to law enforcement. Officers testified that the defendant appeared "sober and in control of his faculties" during the interview with law enforcement. The district court's finding that the defendant voluntarily waived his *Miranda* rights was upheld by the Eighth Circuit. The Eighth Circuit in United States v. Gaddy, 532 F.3d 783, 788-89 (8th Cir. 2008) also upheld a district court's determination that a defendant voluntarily waived his *Miranda* rights because he appeared awake and coherent, acknowledged that he understood his rights, and indicated he wanted to make a statement even though the defendant had not slept the previous night and had consumed pain relievers, muscle relaxers, alcohol, marijuana, and cocaine within 24 hours of waiving his rights. In United States v. Phillips, 506 F.3d 685, 686-687 (8th Cir. 2007), the defendant testified that he consumed four (4) pills of ecstasy and a large glass of brandy before he provided inculpatory statements to law enforcement. The defendant asserted that he did not remember waiving his *Miranda* rights. At the suppression hearing, officers testified the defendant appeared to understand his rights, did not seem intoxicated, and had selective memory when asked about the alleged crime. The defendant was also able to follow the officers' commands and spoke normally. The Eighth Circuit upheld the district court's finding that a defendant's *Miranda* waiver was voluntary, reasoning that the officers' testimony demonstrated the defendant "was lucid and cooperative and did not appear to be so intoxicated that he was unaware of his rights and the consequences of waiving those rights" despite consuming ecstasy and a large amount of alcohol. Id. at 687.

The Court finds that the totality of the evidence reveals that Smith was not too intoxicated to understand his *Miranda* rights on August 16, 2012. The law enforcement officers testified that Smith responded appropriately to the questions asked, his responses were coherent, his speech was "understandable" or "normal," he was attentive, and Smith was not distracted during the interview. The audio-video recording reveals that Smith appeared to be in full control of his mental faculties. Smith initially provided evasive answers, such as refusing to acknowledge that he was with the alleged victim that evening. He also minimized the culpability of his conduct by characterizing the sexual contact with the juvenile as consensual. The officers had observed Smith walk under control without their assistance and without stumbling. Smith's testimony at the evidentiary hearing concurred in all material respects with the officers' recollection of the interview, with the exception of the officers' recitations of Tribal Code Rule 6. Smith testified in detail about the events on the evening of August 15, 2012, and the interview on August 16, 2012. His recollection of the events belies the claims of impaired intoxication. The Court also notes that on cross-examination, Smith acknowledged that his thought process was working at the time the interview was conducted.

In addition to the testimonial evidence presented at the hearing, a portion of Smith's interview was recorded on video. The majority of the recordings are of poor quality. However, the clear portions of the audio-video recording confirm the officers' testimony. The interview room depicted a non-hostile environment, with no evidence of intimidation or coercive conduct by the officers. Officers Cruz, Heart, and Sitting Bear are present in the interview room. Officers Sitting Bear and Heart asked questions of Smith and he provided prompt, coherent, and relevant responses. No noticeable signs of impaired intoxication, such as slurred speech or lack

of control of his body or mental faculties, are apparent on the audio-video recording of the interview.

The Court finds by a preponderance of the evidence that the law enforcement officers explicitly informed Smith of his *Miranda* rights before questioning him on August 16, 2012. The totality of the circumstances reveals that Smith was not too intoxicated to understand and intelligently waive his *Miranda* rights. The evidence shows that Smith was sufficiently in control of his mental faculties at all times during the interview with law enforcement. Smith was cooperative and provided coherent, relevant, and understandable responses to questions. Smith asked questions to clarify the accusations made against him. Smith was initially evasive and minimized his culpability. However, Smith later admitted that he had sexual contact with the minor victim and he recalled the details of the encounter. The evidence clearly shows that Smith's will was not overwhelmed by intoxication during his interview with law enforcement officers on August 16, 2012.

The law enforcement officers testified that after reading Tribal Code Rule 6 to Smith, he acknowledged he understood his rights by nodding and also affirmatively responding "yes." The Court finds the law enforcement officers' testimony to be credible under the circumstances. The Court further finds by a preponderance of the evidence that Smith voluntarily, intelligently, and knowingly waived his *Miranda* rights. The Court denies the motion to suppress Smith's statements to law enforcement officers on August 16, 2012.

### III.  CONCLUSION

The Court has carefully considered the entire record and the evidence introduced at the evidentiary hearing on January 16, 2013. Based on the totality of the circumstances, the Court

finds no basis to suppress Jonathan Smith's statements made to law enforcement officers on August 16, 2012. The Government has demonstrated that the law enforcement officers orally informed Smith of his *Miranda* rights and that Smith voluntarily and intelligently waived his *Miranda* rights. Accordingly, the "Motion to Suppress Evidence" (Docket No. 16) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 28th day of January, 2013.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court